IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CT-3018-BO

| | |
|---|---|
| JABAR BALLARD,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    O R D E R<br>) |
| ALVIN KELLER, et al.,<br>    Defendants. | )<br>) |

Plaintiff, Jabar Ballard, is an inmate in the custody of the North Carolina Department of Correction. Now before the court is defendants' motion for summary judgment. D.E. 45. Proper notice was provided to Ballard, he timely filed a response, as well as filing a motion for appointment of counsel. Roseboro letter, D.E. 51; Response, D.E. 52; Mot. App. Cnsl, D.E. 53. In this posture, the matter is ripe for determination.

Factual Discussion

    a.    Plaintiff's factual allegations

Plaintiff alleges that on June 28, 2010, he was transported from Tabor Correctional Institution ("TCI") to the Brunswick County Jail. Compl., D.E. 1, p. 4. Prior to transport, he states he requested that his blood pressure medicine be processed and sent with him, but he was transferred without his blood pressure medication. Id. Plaintiff states that because he had no medication he "passed out" in the Brunswick County Jail on or about July 2, 2010. Id. According to plaintiff, he requested the medication, but was denied his medication by defendant Elks and Jones. Id. At the time, defendant Kenworthy was the administrator of TCI and responsible for the supervision of Elks and Jones. Id. at p. 5. Plaintiff contends that prison

policy states prisoners shall be transferred with the proper medication. Id.; Response, Ex. B. Plaintiff further claims that defendant Keller was Secretary of the Department of Correction and therefore also responsible for his "well-being" and "care." Id.

b.  Defendants' summary judgment materials

According to plaintiff's housing records, Ballard was housed at TCI from March 30, 2010, until December 23, 2010. D.E. 49, Chavis Aff., ¶ 5. During that time, Ballard was transferred to the Brunswick county jail at least 3 times. Id. at ¶ 6. Ballard was transferred to and from NCDPS custody by a writ - or court order - for his appearance in Brunswick county. Id. at ¶ 7. These writs generally provide for the time, date, and location of the court hearing and may include information such as whether an inmate is allowed to bring his personal property to the county jail. Id. at ¶¶ 7-8.

From the transportation log and "shift narrative," it appears that Ballard's transfer on June 28, 2010, to Brunswick county was without incident. Id. at ¶¶ 10-11. Before his departure, Ballard's personal property was inventoried by officer Donald Jones. Id. at ¶ 12.

Ballard's blood pressure medications was self administered medication. This meant that he was given a one month supply of medications and was expected to self dispense the medication as prescribed and coordinate with nursing staff for refills. D.E.50, Beck Aff., ¶¶ 8-9. Ballard's property inventory from June 28, 2010, indicates that he had in his possession 1 Hydrochlorothinzide 25 MG tab. Chavis Aff., ¶ 14. The inventory does not indicate whether this was 1 bottle or 1 tab or pill of the medication. Id. According to nursing staff, Ballard should have had approximately 15 pills or doses of the medication. Beck Aff., ¶ 11. The medication was indicated "S" for stored with Ballard's other property. Chavis Aff., ¶ 14.

According to both Administrator Chavis and Nurse Beck, while there is a procedure for nursing staff to allowing transferring inmates to take medications with them from NCDPS facility to NCDPS facility, the procedure does not necessarily mandate the same procedures for inmate transfer to outside or non-NCDPS facilities, such as county jails. Chavis Aff., ¶ 16; Beck Aff., ¶ 12. Beck explains that the treatment of inmates transferring within NCDPS facilities and non-NCDPS facilities is demonstrated by the differing forms that are used for inmate admission to a facility (which were also used for Ballard). Id.

If Ballard had requested medication from either Jones or Elkins the morning of June 28, 2010, Jones or Elkins should have forwarded that request to nursing staff. Id. at ¶ 17. No records indicate that Ballard made the request. Id.; Beck Aff., ¶ 13. Additionally, once Ballard was received into the custody of Brunswick County, the jail became completely and solely responsible for the custody and care of him -including medical care. Chavis Aff., ¶ 17; Beck Aff., ¶ 14. Beck, Elkins, and Jones were not trained medical staff and would not have known any possible implication of Ballard not taking his blood pressure medication. Beck Aff., ¶ 23.

According to the records that Ballard submitted to the court (DE #40-2, pp. 4-9), while Ballard was at the Brunswick county jail, he had a transient ischemic attack (TIA) where he lost consciousness and was transported to the local ER for treatment. Beck Aff., ¶¶ 16-17. The local ER did not note any injury to Ballard but sent him back to the jail with a prescription for the same blood pressure medication. Id.

A TIA is a neurological event with the symptoms of a stroke which is generally caused by high blood pressure, but generally the symptoms go away within a short period of time. Id.

3

Case 5:13-ct-03018-BO   Document 54   Filed 11/24/15   Page 3 of 8

On July 6, 2010, Ballard came back to TCI and was given a health screening upon his arrival back at the unit. Beck Aff., ¶ 17. During that screening, Ballard did not report any injuries to medical staff from his TIA nor did medical staff observe any injury. Id. Ballard's treatment at TCI for high blood pressure resumed, and he was provided with his medications. Id. at ¶¶ 20-21.

In December 2010, Ballard made complaints about migraines and his blood pressure, claiming to have been without blood pressure medication for two weeks at TCI. Id. at ¶ 26. However, the nursing notes indicate that Ballard did not follow refill procedures for his medication nor did he report that he needed his medication filled when he saw medical staff two weeks prior for a skin complaint. Id.

After Ballard's return to TCI, he never filed a grievance at Tabor, nor did he make any other complaint about the June 28, 2010 incident. Chavis Aff., ¶ 18. It was not until 2012, when Ballard was housed at Johnston CI, that he filed a grievance. Id.

Legal Discussion

    a.    Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading. Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a

genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A mere scintilla of evidence supporting the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. Matsushita Elec. Indus. Co., 475 U.S. at 586-587. The court may rely on the medical affidavits and prison medical records in ruling on a motion for summary judgment. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

    b.    Qualified Immunity

Defendants assert qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir.2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two-pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it
>
> would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). In resolving the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, 555 U.S. 223 (2009). A court has discretion to decide which step of the two-prong test to analyze first. Pearson, 555 U.S. at 242.

    c.    Medical Care

To establish a claim for medical care in violation of the Eighth Amendment, a plaintiff must demonstrate that the defendant "acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Deliberate indifference requires that an official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Iko, 535 F.3d at 241. Plaintiff must demonstrate that the care provided was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); Hicks v. James, 255 F. App'x 744, 749 (4th Cir. 2007) (per curiam) (unpublished). Only when an action meets both the objective and subjective elements will it offend the "evolving standards of decency" in such a way as to violate the constitutional prohibition against "unnecessary and wanton infliction of pain."

Likewise, "an inadvertent failure to provide adequate medical care" does not rise to the standard necessary to allege an Eighth Amendment violation. Estelle, 429 U.S. at 107; See also Cambron v. Riley, 2011 U.S. Dist. LEXIS 151240 (D.S.C. Oct. 26, 2011) ("Unless medical needs were so serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail.").

6

For a delay in medical treatment, an Eighth Amendment violation only occurs if the delay results in some substantial harm to the patient. Webb v. Hamidullah, 281 F. App'x 159 (4th Cir. 2008). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001).

Ballard has failed to show that any of the defendants were deliberately indifferent to his care. Prior to Ballard's transfer to Brunswick County Jail, he had been diagnosed with elevated blood pressure, appropriate medicine was prescribed, and he was allowed to self-administer that medication. Ballard alleges that his claim arose when he alerted officer "D. Jones" that he had blood pressure medication and requested to take it with him to the Brunswick County Jail on June 28, 2010. There is no evidence of such request. Regardless, if Jones' or Elkins actions did know of the request, failed to transmit the request, and thereby violated the policy, Ballard has not presented any evidence that Jones or Elkins actually knew of his medical condition, appreciated the risk of not providing him with his medication, and knew of the implications of not providing him the medication. At most, Ballard has stated a claim for negligence. Likewise, Ballard makes no allegations of personal involvement by Kenworthy or Keller regarding the June 28, 2010, incident. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985); Polk Co. v. Dodson, 454 U.S. 312, 325,26 (1981). Therefore, the claims are must be denied on summary judgment.

Conclusion

Accordingly, defendants' motion for summary judgment [D.E. 45] is GRANTED and the case is DISMISSED. Having so determined, the pending motion for appointment of counsel [D.E. 53] is DENIED as MOOT. The case is CLOSED.

SO ORDERED, this the 23 day of November 2015.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

Ballard could have requested his blood pressure medication at any time from June 28 to July 2, 2010, from staff at the Brunswick county jail and they would have been responsible for providing him the same. (Beck Aff., ¶15) In fact, Ballard admits to having made that very request of "jail staff." (D.E. #1, p. 4).